## McDonald & Penfield v. Dodge County.

FILED OCTOBER 2, 1894.    No. 5512.

1. **Drainage Contracts: DAMAGES FOR BREACH.** The provision of section 20, chapter 89, Compiled Statutes, for the reletting of contracts where contractors for drainage ditches have failed to complete their work within the time specified, is designed for the benefit of the persons whose property is chargeable with such improvements, and is not the exclusive method of determining the amount of damage on account of such failure.

2. **Evidence: DRAINAGE CONTRACTS: DAMAGES FOR BREACH.** An engineer, who examined the work two months after it was abandoned by the contractors and found the original stakes showing the depth of the ditch and was able to verify his estimate from such stakes, *held* competent to testify to the cost of completing such work in accordance with the contract.

3. **Review: HARMLESS ERROR.** Error not prejudicial to the complaining party is no ground for the reversal of a judgment.

4. **Evidence** *held* to sustain the judgment of the trial court.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

*Frick, Dolezal & Stinson* and *Munger & Courtright,* for plaintiffs in error, cited: *Mercer v. Harris,* 4 Neb., 77.

*C. Hollenbeck* and *Gray & Carey,* contra, cited: *Burlington & M. R. R. Co. v. Schluntz,* 14 Neb., 421; *Sioux City R. Co. v. Brown,* 13 Neb., 317.

POST, J.

This is a petition in error from the district court for Dodge county. It appears from the record that plaintiffs in error presented to the board of supervisors of the defendant county a claim for an alleged balance on a contract for the construction of a ditch for said county under the provisions of chapter 89, Compiled Statutes. Said claim having been rejected by the county board, an appeal was taken to the district court, where a trial was had, resulting in a verdict and judgment for the plaintiffs, who, being dissatisfied with the award, moved for a new trial, which was refused, and the cause removed to this court upon allegations of error.

Among the provisions of the contract, plaintiffs were required to "complete the work embraced in the contract, plans, and specifications of the engineer, and subject to the approval of the board of supervisors before final acceptance is made by the engineer. * * * All excavated material shall be placed on the easterly side of the proposed ditch. * * * The berm between the road and the ditch shall not be less than six feet in width. * * * The ditch will be eight feet in width on the bottom, and of such slope as the engineer may direct and stake out. * * * No extras of any kind will be allowed * * * except the rate of one cent per cubic yard for each yard hauled in excess of one thousand feet, for each one hundred feet so hauled in excess of one thousand feet, but the actual measurement of the solid contents shall only be considered, as measured in the embankment on the completion of the

work. * * * The engineer, first having the consent of the board of supervisors, shall be at the liberty, from time to time, to order in writing any alteration in the construction of the embankments, or other points in the work, or any change not affecting the general direction of the work, or diminishing the capacity of the proposed ditch. * * * This contract shall be completed by the 15th day of June, 1891. * * * The engineer in charge shall in all cases determine the amount of the several kinds of work done which are to be paid for under this contract, and he shall decide all questions which may arise relating to the execution of this contract, on the part of the contractor, and his estimates and decisions shall be final and conclusive, subject to the approval of the board of supervisors; but this provision shall not be construed to prevent the second party herein from appealing from such decision or seeking redress in the courts. * * * The contractor will place all earth excavated in an embankment on the easterly side of the proposed ditch ; said embankment to be of uniform grade and width; such grade and width to be shown by stakes set by the engineer."

The cause was tried without pleadings in the district court; but it is apparent from the record that the plaintiffs in error had failed to complete the work undertaken by them to the satisfaction of the county board.

The first error assigned is the rejection of evidence tending to prove that the board did not cause the contract to be completed by the lowest bidder therefor in accordance with the provisions of section 20 of the act above named, viz.: "Any contract not completed within the time specified shall be re-estimated and relet to the lowest responsible bidder, but not for a sum greater than the estimate, nor a second time to the same party; *Provided*, The board of commissioners may, for a good cause, extend the time of any contractor not to exceed two years." It is claimed by plaintiffs that the means thus provided for the ascertainment

of damage resulting from the failure to complete the work in accordance with the undertaking of the contractor is exclusive. In that view we are unable to concur. In construing that as well as other provisions involved in this controversy, it should be remembered that the county executing the contract for a drainage ditch cannot be said to be the party in interest, but acts rather in the nature of a trustee for the persons whose property is chargeable with the cost of work in hand. Viewing it in that light, we cannot say that the provision of the statute is exclusive. We prefer rather to regard it as a direction to the county board for the benefit of the property owners interested.

2. Another contention of the plaintiffs which the district court declined to sustain was that under the statute and the contract made in pursuance thereof, all controversies between the board and the contractor must be referred to the engineer in charge of the work, whose estimates shall be conclusive upon both parties. The provision of statute relied upon to sustain that claim is section 19, which reads as follows: "The work shall be done under the supervision of the surveyor or engineer appointed by the commissioners, and when a part, not less than one-fourth of the portion included in any contract, is completed according to the specifications, he shall give the contractor a certificate thereof, showing the proportional amount which the contractor is entitled to be paid according to the terms of the contract, and the county clerk shall, upon presentation of such certificate, draw his warrant upon the treasurer for seventy-five per cent of said amount, and the treasurer will pay the same out of any funds in the treasury applicable to such purposes." The contract offered in evidence contains the following provision: "To prevent disputes and litigation, it is further agreed by the parties hereto that the engineer in charge shall in all cases determine the amount of the several kinds of work done which are to be paid for under this contract, and he shall decide all ques-

tions which may arise relating to the execution of this con-
tract on the part of the contractor, and his estimates and
decisions shall be final and conclusive, subject to the ap-
proval of the board of supervisors; but this provision shall
not be construed to prevent the second party herein from
appealing from such decision or seeking redress in the
courts." The language of the contract, although ambigu-
ous in some respects, is certainly explicit so far as the effect
of the engineer's finding is concerned. The stipulation
that the contract "shall not be construed to prevent the
second party from appealing from such decisions or seeking
redress in the courts" appears to us too plain for construc-
tion. We do not hesitate, therefore, to hold that the amount
due under the contract was a proper subject of inquiry.
We find in the record what purports to be a final estimate
by Mr. Burrell, the engineer, under date of July 3, 1891,
from which it appears that there was then due plaintiffs the
sum of $3,334.22. This estimate the county board re-
fused to confirm, although it seems that payments were
made on account from time to time, until the 24th day of
September, 1891, when the plaintiffs' final claim for
$1,111.40 was presented and disallowed, and from which
order the appeal was prosecuted. We are left in doubt by
the record whether the plaintiffs' action is founded upon
that estimate; but assuming it to be in effect an action on
an award of the engineer, the plaintiffs' claim cannot be
sustained, for the reason that by the contract such finding
or estimate is not made *prima facie* evidence of the
amount due.

3. It is claimed that the trial court erred in permitting
engineers Tillson and Patterson to testify to the condition
of the work and the cost of completing the same, on the
ground that the conditions, at the time of their examina-
tion, were materially different from those existing at the
time the work is claimed to have been completed. Till-
son's survey was made about six weeks after the plaintiffs

left the work, and he testifies to finding the original stakes showing its depth, and that in case of doubt about the bottom of the ditch he was able to verify his estimate by the original stakes. Patterson's survey was made about two months after the plaintiffs left, and he testified, in substance, to finding the sides and bottom of the ditch in the condition in which they were left by the contractor. On that record we cannot say that the admission of the testimony was error, although the argument employed is entitled to consideration as bearing upon the question of the weight of the evidence.

4. In one paragraph of the charge the jury were told to ascertain the amount of lumber used by plaintiffs in the construction of the ditch and to allow them therefor at the rate of "$25 per thousand feet, or $1.25 per hundred feet." This instruction is assigned as error, the criticism thereof being the use of the figures "$1.25," which is evidently a clerical error on the part of the court; but we cannot say that the plaintiffs have been prejudiced by that error, since the jury were plainly directed to compute for the lumber at the rate of $25 per thousand, which is admitted to be correct. Again, the contract, which in explicit terms prescribes the rate to be allowed for lumber used, was set out in full in another paragraph of the charge.

5. The other assignments relate to the sufficiency of the evidence. From an examination of the entire record we are unable to find that there is such a failure of proof as will warrant interference by this court. The judgment of the district court is therefore

Affirmed.